## U.S. WEST COMMUNICATIONS, INC., a Colorado corporation, Plaintiff–Appellee,

v.

WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, an agency organized and existing under the laws of the State of Washington; Anne Levinson, as member of the Washington Utilities and Transportation Commission; Richard Hemstad, as member of the Washington Utilities and Transportation Commission; William S. Gillis, as member of the Washington Utilities and Transportation Commission, Defendants,

AT&T Wireless Services, Inc., Defendant–Appellant.

No. 98–36013.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 2000

Filed July 3, 2001

---

* Arthur S. Lujan is substituted for his predecessor, Victoria L. Bradshaw, as Labor Commissioner of the State of California.

Daniel M. Waggoner and Gregory J. Kopta, Davis Wright Tremaine LLP, Seattle, Washington, for the defendant-appellant.

Michael C. Thompson and Joyce Grant, U.S. West, Inc., Denver, Colorado; Judith A. Endejan, Williams, Kastner & Gibbs PLLC, Seattle, Washington, for the plaintiff-appellee.

Christine O. Gregoire, Attorney General, and Ann E. Rendahl, Assistant Attorney General, Olympia, Washington, for defendants-appellees.

Before: BRIGHT,* REINHARDT, and SILVERMAN, Circuit Judges.

BRIGHT, Circuit Judge:

AT & T Wireless Services, Inc. ("AT & T") appeals from the district court's grant of summary judgment affirming the agreement arbitrated by the State of Washington Utilities and Transportation Commission ("the Commission") pursuant to the Telecommunications Act of 1996 ("Act"), 47 U.S.C. §§ 251–61. AT & T contests the agreement provision providing the reciprocal compensation rate for U.S. West Communications, Inc. ("U.S.West") traffic transported and terminated on AT & T's network. AT & T argues that it should be compensated at the higher tandem rate and not the lower end-office rate as determined in arbitration. The district court affirmed the Commission's arbitrated agreement. We hold that the Commission erred when it concluded that AT & T should be compensated at the end-office rate for U.S. West traffic terminating on AT & T's network and, therefore, we **REVERSE**.

## I. BACKGROUND

The Telecommunications Act is designed to foster competition in local and long distance telephone markets by neutralizing the competitive advantage inherent in incumbent carriers' ownership of the physical networks required to supply telecommunication services. Sections 251 and 252 of the Act require incumbent local exchange carriers ("ILECs") to allow commercial mobile radio service providers ("CMRS providers") to interconnect with their existing networks in return for fair compensation. 47 U.S.C. §§ 251–52. The Act directs the ILECs and CMRS providers to negotiate in good faith to reach an interconnection agreement. 47 U.S.C. §§ 251(c)(1), 252(a). If an ILEC and a CMRS provider are unable to agree, the Act provides for the state public utilities commission to conduct binding arbitration. 47 U.S.C. § 252(b). After the state commission approves an arbitrated agreement, any party to the agreement may bring an action in district court "to determine whether the agreement ... meets the requirements" of the Act. 47 U.S.C. § 252(e)(6).

U.S. West is an ILEC authorized to provide telecommunication services in Washington State. AT & T is a CMRS provider authorized to provide wireless telecommunication services in Washington State. In October 1996, AT & T requested

---

* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

interconnection negotiations with U.S. West pursuant to § 252(a), but the ensuing negotiations failed to provide an interconnection agreement. After AT & T filed a timely petition to have the Commission arbitrate an interconnection agreement pursuant to § 252(b)(1), the Commission's arbitrator conducted a hearing and filed a Report and Decision in July 1997.

The arbitrator used U.S. West's wire-line network architecture as the standard for setting the appropriate reciprocal compensation rate, he imposed a two-tiered reciprocal compensation rate for AT & T calls terminated on U.S. West's network (depending on whether a tandem or end-office switch is involved), and he imposed the end-office rate on all U.S. West calls terminated on AT & T's network. Specifically, the arbitrator set the following termination rates and an average transportation rate: (1) an end-office termination rate of $0.002557 per minute of use; (2) a tandem switching termination rate of $0.001310 per minute of use; and (3) an average transportation rate of $0.000318 per minute of use. The arbitrator determined that when local traffic from an AT & T mobile telephone travels through a U.S. West tandem switch and a U.S. West end-office switch before terminating on a U.S. West wire-line telephone, AT & T must pay U.S. West the "tandem rate" of $0.004185, which is the end-office termination rate of $0.002557 per minute of use, plus the tandem switching termination rate of $0.001310 per minute of use, plus the average transportation rate of $0.000318 per minute of use. When local traffic from an AT & T mobile telephone only travels through a U.S. West end-office switch before terminating on a U.S. West wire-line telephone, AT & T must pay U.S. West the end-office termination rate of $0.002557 per minute of use. However, when local traffic from a U.S. West land-line telephone travels through an AT & T Mobile Switching Center ("MSC") before termi-

nating on an AT & T mobile telephone, U.S. West must pay AT & T the end-office termination rate of $0.002557 per minute of use.

The Commission instructed the parties to submit an interconnection agreement in accordance with the arbitrator's decision. U.S. West filed a timely petition for reconsideration and, in August 1997, the arbitrator denied U.S. West's petition for reconsideration.

The Commission held an open public meeting in September 1997 to review the arbitrator's Report and Decision and the subsequent proceedings. The Commission adopted the arbitrator's Report and Decision, denied both parties' requests for modification, and approved the interconnection agreement with some minor changes.

U.S. West sought review of the Commission's decision in the district court pursuant to § 252(e)(6), and AT & T filed an answer, counterclaim, and cross-claim. The parties then filed cross-motions for summary judgment. The district court granted summary judgment in favor of the Commission on U.S. West's and AT & T's claims and dismissed one of U.S. West's claims without prejudice. U.S. West appealed and AT & T filed a cross-appeal. U.S. West subsequently dismissed its appeal. Only AT & T's cross-appeal remains before this court. In this appeal, AT & T argues that it should be compensated at the tandem rate and not the end-office rate for terminating U.S. West's traffic.

## II. JURISDICTION

The Commission acquired jurisdiction under 47 U.S.C. § 252(b) to arbitrate the interconnection agreement between U.S. West and AT & T. The district court reviewed the Commission's decision under 47 U.S.C. § 252(e)(6) and 28 U.S.C. §§ 1331, 1337.

The district court entered a final judgment granting summary judgment to the Commission on all of U.S. West's and AT & T's claims. AT & T filed a timely notice of appeal pursuant to Fed. R.App. P. 4(a)(3), and, therefore, this court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 1294(1).

## III. STANDARD OF REVIEW

■ We review de novo the district court's grant of summary judgment. *U.S. West Communications v. MFS Intelenet, Inc.,* 193 F.3d 1112, 1117 (9th Cir.1999), *cert. denied,* 530 U.S. 1284, 120 S.Ct. 2741, 147 L.Ed.2d 1005 (2000). We review de novo whether the arbitrated agreements are in compliance with the Act and the implementing regulations, and we review all other issues under an arbitrary and capricious standard. *Id.; see also MCI Telecomm. Corp. v. U.S. West Communications,* 204 F.3d 1262, 1266–67 (9th Cir.) (reviewing de novo compliance with the Act and regulations and all other issues under an arbitrary and capricious standard), *cert. denied,* 531 U.S. 1001, 121 S.Ct. 504, 148 L.Ed.2d 473 (2000).

## IV. DISCUSSION

■ AT & T argues that the district court erred in affirming the Commission's reciprocal compensation rate for U.S. West's traffic transported and terminated on AT & T's network. In particular, AT & T argues that U.S. West should compensate it at the tandem rate and not the end-office termination rate because its MSCs serve a comparable geographic area to the area served by U.S. West's tandem switches. In support of its argument, AT & T relies on the regulations promulgated by the Federal Communications Commission ("FCC") pursuant to the Act and on the FCC's First Report and Order, both of which interpret the Act's reciprocal compensation requirements.

U.S. West and the Commission argue that the arbitrator correctly determined that U.S. West should compensate AT & T at the end-office termination rate for transporting and terminating U.S. West traffic because AT & T's MSCs perform end-office switching functions.

### A. The Telecommunications Act of 1996

■ The basic principles for setting the reciprocal compensation rate are laid out in the statute itself. The Act requires the parties to an interconnection agreement to pay each other reciprocal compensation. Each carrier must pay the other for transporting and terminating calls that originate on their network. 47 U.S.C. §§ 251(b)(5), 252(d)(2)(A). The Act provides, in relevant part:

[A] State commission shall not consider the terms and conditions for reciprocal compensation to be just and reasonable unless—

(i) such terms and conditions provide for the mutual and reciprocal recovery by each carrier of costs associated with the transport and termination on each carrier's network facilities of calls that originate on the network facilities of the other carrier; and

(ii) such terms and conditions determine such costs on the basis of a reasonable approximation of the additional costs of terminating such calls.

47 U.S.C. § 252(d)(2)(A). Therefore, the reciprocal compensation rate must be based on the carrier's *costs incurred* transporting and terminating the call and on a reasonable approximation of the additional *costs incurred* terminating calls originating on the other carrier's network. *Id.*

In this case, the arbitrator imposed a two-tiered reciprocal compensation rate for AT & T calls terminated on U.S. West's network (depending on whether a

tandem or end-office switch is involved) and he imposed the end-office rate on all U.S. West calls terminated on AT & T's network. The arbitrator reasoned that tandem switching costs more than end-office switching because tandem switching involves two switching functions and end-office switching involves one switching function. The arbitrator concluded that AT & T should pay U.S. West for terminating AT & T's traffic depending upon whether AT & T hands off its traffic at U.S. West's end-office or tandem switch. Then, the arbitrator analyzed the function of AT & T's MSC. He concluded that U.S. West should pay AT & T at the end-office rate for U.S. West traffic terminating on AT & T's network because AT & T's MSC functions like U.S. West's end-office switch.

In his Report and Decision, the arbitrator explained that:

> The most striking difference between the two networks is the ability of the wireless operator to choose between incurring the cost of interconnecting at end office switches, where the rates are lower, or at tandem switches, which function in a greater service area. Tandem switching rates are higher because they necessarily involve two switching operations to terminate a call. A wireline operator has no comparable opportunity to make a financially driven decision when terminating traffic on the wireless network. This factor is preeminent in the decision that a MSC is not the functional equivalent of a tandem switch.

(E.R. at 57.)

Section 251(d)(2)(A)(i) of the Act provides for the "*recovery* by each carrier of costs associated with the transport and termination on each carrier's network facilities of calls that originate on the network facilities of the other carrier." 47 U.S.C. § 252(d)(2)(A)(i) (emphasis added).

Thus, under the reciprocal compensation requirement, each carrier should *recover* the costs it *incurs*.

We assume, for this appeal, that the costs U.S. West incurs depend on whether an end-office or tandem switch is involved. Therefore, U.S. West should be paid according to whether its end-office or tandem switches are involved in terminating AT & T's traffic. The arbitrator's two-tiered reciprocal compensation rate for AT & T traffic terminating on U.S. West's network enables U.S. West to recover the costs it incurs when it terminates AT & T's traffic.

■ The arbitrator's determination that AT & T's MSCs function differently from U.S. West's tandem switches and that AT & T's MSCs function more like U.S. West's end-office switches was not arbitrary and capricious. However, AT & T's ability to hand off (i.e., deliver) its traffic to U.S. West in a financially efficient way does not justify imposing the end-office rate (rather than the tandem rate) on U.S. West's traffic terminating on AT & T's network. AT & T's ability to efficiently interconnect with U.S. West affects the costs that U.S. West incurs; it does not affect the costs AT & T incurs terminating U.S. West's traffic and should not affect AT & T's recovery under § 252(d)(2)(A). AT & T should be paid according to the costs it incurs, not according to the costs it avoids imposing on U.S. West. Penalizing AT & T for its efficiently configured network architecture defeats the letter of § 252(d)(2)(A) and the spirit of the Act by eliminating any incentive to make economically efficient interconnection decisions. *See In re Implementation of the Local Competition Provisions in the Telecomm. Act of 1996,* 11 F.C.C.R. 15,499, CC Docket No. 96–98 at ¶ 209 (Aug. 8, 1996). Therefore, according to the statute, the arbitrator's analysis of the switches' functions and his determination that AT & T's MSC can

deliver its traffic in a financially efficient way are not relevant to whether AT & T is entitled to the tandem rate for the traffic it terminates.

## B. The Regulations

The FCC promulgated regulations to provide guidance for setting the reciprocal compensation rate. 47 C.F.R. § 51.711. The FCC directed the states to establish presumptive symmetrical reciprocal compensation rates. Section 51.711(a) provides that the "[r]ates for transport and termination of local telecommunications traffic shall be symmetrical...." 47 C.F.R. § 51.711(a). Section 51.711(a)(1) states that "symmetrical rates are rates ... for the same services." 47 C.F.R. § 51.711(a)(1). The regulations go on to say that, "Where the switch of a carrier other than an incumbent LEC serves a geographic area comparable to the area served by the incumbent LEC's tandem switch, the appropriate rate for the carrier other than an incumbent LEC is the incumbent LEC's tandem interconnection rate." 47 C.F.R. § 51.711(a)(3).

■ The only question we address in this appeal is whether AT & T should be compensated at the tandem rate and not the end-office rate for U.S. West traffic terminated on AT & T's network. The parties did not raise and we do not address whether 47 C.F.R. § 51.711(a)'s symmetry requirement demands a single rate (rather than a two-tiered rate) for both carriers regardless of where the call is handed off and to whom, or if rates should differ for termination of traffic on an ILEC's network, depending upon whether the traffic is handed off at the ILEC's end-office or tandem switch. For the purposes of this

appeal only, we assume, without deciding, that the arbitrator's two-tiered reciprocal compensation scheme fulfills the symmetry requirement.[1] In addition, we do not venture any opinion concerning whether the ILEC's network architecture is the appropriate standard for setting the reciprocal compensation rate.

Nevertheless, U.S. West argues that AT & T is not entitled to the tandem rate because AT & T's MSCs do not provide the "same services" as U.S. West's tandem switches. AT & T argues that, according to § 51.711(a)(3) of the regulations, it is entitled to the tandem rate because its MSCs serve a geographic area comparable to the area served by U.S. West's tandem switches.

U.S. West's same-services argument does not apply to the question presented in this case. Section 51.711(a)(1) merely defines symmetrical rates. 47 C.F.R. § 51.711(a)(1). We have already assumed, for the purposes of this appeal, that the arbitrator's two-tiered reciprocal compensation scheme fulfills the symmetry requirement. The only question presented in this case is whether AT & T is entitled to the tandem rate; we are not concerned with whether an asymmetrical rate is appropriate. Therefore, U.S. West's argument that AT & T is not entitled to the tandem rate because AT & T's MSCs do not provide the same services within the meaning of § 51.711(a)(1) is beside the point. The regulations require U.S. West to pay AT & T the tandem rate because AT & T's MSCs serve a geographic area comparable to the area served by U.S. West's tandem switches. 47 C.F.R. § 51.711(a)(3) ("Where the switch of a carrier other than an incumbent LEC serves

---

1. We recognize that § 251(c)(2) gives CMRS providers the right to deliver traffic to any technically feasible point on an ILEC's network; it does not obligate them to transport traffic to inconvenient or inefficient interconnection points. *In re Implementation of the Local Competition Provisions in the Telecomm. Act of 1996*, 11 F.C.C.R. 15,499, CC Docket No. 96–98 at ¶ 209 (Aug. 8, 1996).

a geographic area comparable to the area served by the incumbent LEC's tandem switch, the appropriate rate for the carrier other than an incumbent LEC is the incumbent LEC's tandem interconnection rate.").

## C. The FCC's First Report and Order

In 1996, the FCC published its First Report and Order providing further guidance to states for setting the reciprocal compensation rate by explaining how to reasonably approximate the "additional costs" of terminating calls under 47 U.S.C. § 252(d)(2)(A)(ii). The First Report and Order provides, in relevant part:

> We find that the "additional costs" incurred by a LEC when transporting and terminating a call that originated on a competing carrier's network are likely to vary depending on whether tandem switching is involved. We, therefore, conclude that states may establish transport and termination rates in the arbitration process that vary according to whether the traffic is routed through a tandem switch or directly to the end-office switch. In such event, states shall also consider whether new technologies (e.g., fiber ring or wireless networks) perform functions similar to those performed by an incumbent LEC's tandem switch and thus, whether some or all calls terminating on the new entrant's network should be priced the same as the sum of transport and termination via the incumbent LEC's tandem switch. Where the interconnecting carrier's switch serves a geographic area comparable to that served by the incumbent LEC's tandem switch, the appropriate proxy for the interconnecting carrier's additional costs is the LEC tandem interconnection rate.

*In re Implementation of the Local Competition Provisions in the Telecomm. Act of 1996,* 11 F.C.C.R. 15,499, CC Docket No. 96–98 at ¶ 1090 (Aug. 8, 1996) (hereinafter "Paragraph 1090").

█ It is well established that we give substantial deference to an agency's interpretation of its own regulations because its expertise makes it well-suited to interpret statutory language. *Dep't of Health & Human Servs. v. Chater,* 163 F.3d 1129, 1133 (9th Cir.1998) (citing *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)). "This deference is warranted all the more when the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entails the exercise of judgment grounded in policy concerns." *Id.* at 1134 (internal quotation omitted).

Under Paragraph 1090's final sentence, AT & T is entitled to the tandem rate because its switches serve a comparable geographic area to U.S. West's tandem switches. When the arbitrator concluded that AT & T should compensate U.S. West for terminating its traffic depending upon whether AT & T's traffic is handed off at U.S. West's end-office or tandem switch, he followed the meaning of the first two sentences of Paragraph 1090 because, according to Paragraph 1090, the costs incurred by the local exchange carrier for transporting and terminating traffic depend on whether tandem switching is involved. The additional costs described in the first sentence apply only to U.S. West because U.S. West is a local exchange carrier and AT & T is a commercial mobile radio service provider.[2] Paragraph 1090's

**2.** The FCC does not classify CMRS providers as LECs. *In re Implementation of the Local Competition Provisions in the Telecomm. Act* *of 1996,* 11 F.C.C.R. 15,499, CC Docket No. 96–98 at ¶ 34 (Aug. 8, 1996).

third sentence compares AT & T's "new technologies" (i.e., its network architecture) to U.S. West's tandem switch and requires the arbitrator to consider the function of AT & T's network architecture in determining whether U.S. West should pay AT & T the tandem rate for some or all of its calls terminated on AT & T's network. The fourth sentence declares that the tandem rate is the appropriate interconnection rate if AT & T's MSCs serve a comparable geographic area as that served by U.S. West's tandem switches. AT & T's MSCs serve a comparable geographic area as that served by U.S. West's tandem switches. Therefore, under the FCC's regulations, AT & T is entitled to the tandem rate because its MSCs serve a comparable geographic area to U.S. West's tandem switches.

A recent FCC letter supports our conclusion. In a letter dated May 9, 2001, the FCC determined the following:

> With respect to when a carrier is entitled to the tandem interconnection rate, the Commission stated that section 51.711(a)(3) of its rules requires only that the comparable geographic area test be met before a carrier is entitled to the tandem interconnection rate for local call termination. It noted that although there has been some confusion stemming from additional language in the text of the Local Competition Order regarding functional equivalency, section 51.711(a)(3) requires only a geographic area test. Therefore, a carrier demonstrating that its switch serves "a geographic area comparable to that served by the incumbent LEC's tandem switch" is entitled to the tandem interconnection rate to terminate local telecommunications traffic on its network.

Letter from Thomas J. Sugrue, Chief, Wireless Telecommunications Bureau of the FCC, and Dorothy T. Attwood, Chief, Common Carrier Bureau of the FCC, to Charles McKee, Senior Attorney, Sprint PCS (May 9, 2001) (internal citations omitted).

## V. CONCLUSION

The Commission erred when it concluded that U.S. West should compensate AT & T at the end-office rate for traffic originating on U.S. West's network and terminating on AT & T's network. Therefore, we REVERSE and direct the district court to enter an appropriate judgment consistent with this opinion.